FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Antonio K Witherspoon

(Enter above the full name of the plaintiff in this action)

V.

Office of the Prosecutor County of Aluntic

William E. Reynolds

David C. Little

(Enter the full name of the defendant of defendants in this action)

COMPLAINT

Civil Action No. _____

(To be supplied by the Clerk of the Court)

RECEIVED

FEB 13 2026

AT 8:30_____M

CLERK, U.S. DISTRICT COURT - DNJ

## INSTRUCTIONS; READ CAREFULLY

1.    This complaint must be legibly handwritten or typewritten, signed by the plaintiff and   subscribed to under penalty of perjury as being true and correct.  All questions must be answered concisely in the proper space on the form.  Where more space is needed to answer any question, attach a separate sheet.

2.    In accordance with Rule 8 of the Federal Rules of Civil Procedure, the complaint should contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short plain statement of the claim showing that you are entitled to relief, and (3) a demand for judgment for the relief which you seek.

3.    You must provide the full name of each defendant or defendants and where they can be found.

4.    You must send the original and one copy of the complaint to the Clerk of the District Court.  You must also send one additional copy of the complaint for each defendant to the Clerk. Do not send the complaint directly to the defendants.

5.    Upon receipt of a fee of $402.00 (a filing fee of $350.00, and an administrative fee of   $52.00), your complaint will be filed.  You will be responsible for service of a separate summons and copy of the complaint on each defendant.  See Rule 4, Federal Rule of Civil Procedure.

6.   If you cannot prepay the $402.00 fee, you may request permission to proceed in forma pauperis in accordance with the procedures set forth in the application to proceed in forma pauperis. See 28 U.S.C. §1915. (If there is more than one plaintiff, each plaintiff must separately request permission to proceed in forma pauperis.)

7.   If you are given permission to proceed in forma pauperis, the $52.00 Administrative Fee will not be assessed. The Clerk will prepare and issue a copy of the summons for each defendant. The copies of summonses and the copies of the complaint which you have submitted will be forwarded by the Clerk to the United States Marshal, who is responsible for service. The Marshal has USM-285 forms you must complete so that the Marshal can locate and serve each defendant. If the forms are sent to you, you must complete them in full and return the forms to the Marshal.

## QUESTIONS TO BE ANSWERED

1a.   Jurisdiction is asserted pursuant to (CHECK ONE)

   X   42 U.S.C. §1983 (applies to state prisoners)

   ___   Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal prisoners)

   If you want to assert jurisdiction under different or additional statutes, list these below: 42 USC § 1985, 1986, 1988
   15 USC § 1, 1116, 1117
   12 USC § 1331, 1343

1b.   Indicate whether you are a prisoner or other confined person as follows:

   X Pretrial detainee

   ___ Civilly-committed detainee

   ___ Immigration detainee

   ___ Convicted and sentenced state prisoner

   ___ Convicted and sentenced federal prisoner

   ___ Other: (please explain)_____

RECEIVED

FEB 13 2026

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

2.      Previously Dismissed Federal Civil Actions or Appeals

If you are proceeding in forma pauperis, list each civil action or appeal you have brought in a federal court while you were incarcerated or detained in any facility, that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted. Please note that a prisoner who has on three or more prior occasions, while detained in any facility, brought an action or appeal in a federal court that was dismissed as frivolous or malicious or for failure to state a claim upon which relief may be granted, will be denied in forma pauperis status unless that prisoner is under imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

a.      Parties to previous lawsuit:

Plaintiff(s): ~~Atlantic City Police Department~~ Antonio K Witherspoon

Defendant(s): Atlantic City Police Department

b.      Court and docket number: Appeal Active - 25-2926

c.      Grounds for dismissal: ( )     frivolous     ( ) malicious

( · )     failure to state a claim upon which relief may be granted

d.      Approximate date of filing lawsuit: October 1, 2025

e.      Approximate date of disposition: Still active

If there is more than one civil action or appeal, describe the additional civil actions or appeals using this same format on separate sheets.

3.      Place of Present Confinement? Atlantic County Justice Facility

4.      Parties

(In item (a) below, place your name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any.)

a.      Name of plaintiff: Antonio K Witherspoon

Address: 5060 Atlantic Ave, Mays Landing, NJ 08330

Inmate#: 01-299435

b.    First defendant:

Name: David C. Little

Official position: Assistant Atlantic County Prosecutor

Place of employment: 4997 Unami Blvd, Suite 2, Mays Landing, NJ 08330

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

Neglected to Prevent Conspiracy against my right

Knowingly and Willfully Submitted False Data

Conspiring to Suborn Perjured Police testimony

c.    Second defendant:

Name: William E. Reynolds

Official position: Atlantic County Prosecutor

Place of employment: 4997 Unami Blvd, Suite 2, Mays Landing, NJ 08330

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

Neglected to Prevent Conspiracy against my rights

Knowingly and Willfully Submitted False Data

Conspiring to Suborn Perjured Police testimony

d.    If there are more than two defendants, attach a separate sheet. For each defendant specify: (1) name, (2) official position, (3) place of employment, and (4) involvement of the defendant.

5. I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims on page 6.

X Yes    ___No

If your answer is "Yes," briefly describe the steps taken, including how relief was sought, from whom you sought relief, and the results.

Letters Sent to Attorney General.

A.G. Case # 202512229
Reference # OAG-OCS-CAS-2025-006488

If your answer is "No," briefly explain why administrative remedies were not exhausted.

6. Statement of Claims

(State here as briefly as possible the facts of your case. Describe how each defendant violated your rights, giving dates and places. If you do not specify how each defendant violated your rights and the date(s) and place of the violations, your complaint may be dismissed. Include also the names of other persons who are involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach a separate sheet if necessary.)

At all times mentioned in this complaint the defendants separatly and in concert with each other, engaged in acts and omissions that Constitutes deprivation of my rights. These acts were Carried out Under the Color of law and had no Justification or excuse in law. Atlantic County Prosecutors had the Power to prevent the Conspiracy against my rights and Further Violations of the law. Defendant acted Outside the scope of their Jurisdiction by failing to and refusing to

perform their duty and became a party to the injuries inflicted on me. by Atlantic City Police Department by knowingly and willfully submitting false data regarding the transaction that led to my arrest. By conspiring to suborn perjured police testimony. By failing to notify the Atlantic County district attorney about Atlantic City Police Department falsifying their case files. On November 7, 2025 at 8:07:23 AM Atlantic County prosecutor William E. Reynolds and assistant Atlantic County Prosecutor David C. Little, submitted a brief that violated my rights to due process, impartial jury, deprivation of life, liberty, freedom, negligence in the performance of duties and summary punishment without trial. These rights are secured to me by the provisions of the sixth and fourteenth amendments to the Constitution of the United States of America and by title 42 usc§ 1983, 1985, 1986, 1988 and by title 12 usc§ 1331 and 1343. Solely as a result of these actions I was deprived of my freedom for a considerable period of time and suffered severe emotional and mental distress and continues to suffer. I fear the repetition of this unlawful conduct by Atlantic County Prosecutors and Atlantic City Police Department as this has happened three times in the past WITHOUT consequences. At no time was I under arrest prior to search.

7.    Relief

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

I demand judgment against defendants for injunctive relief, compensatory damages, punitive damages, costs of suit and attorney fees combined total of $400,000,000 in consumer credits or $400,000,000 USD (Four Hundred Million US dollars or Consumer Credits)

to Punish and deter each defendant against repetition of these Violations.

— Relief Conditions —

Consumer Credits are not to be Cancelled or terminated for any reason. * Prefer Consumer Credits over second option. *

Cash Judgment in My Favor Not to be garnished or taxed or frozen for any reason.

8. Do you request a jury or non-jury trial? (Check only one)

( ) Jury Trial (X) Non-Jury Trial

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __2__ day of __Feb__ , 20_2_6_

__A. Witherspoon__

Signature of plaintiff*

(*EACH PLAINTIFF NAMED IN THE COMPLAINT MUST SIGN THE COMPLAINT HERE. ADD ADDITIONAL LINES IF THERE IS MORE THAN ONE PLAINTIFF. REMEMBER, EACH PLAINTIFF MUST SIGN THE COMPLAINT).

Antonio K Witherspoon v. Atlantic City Police Department
Case Number: 25-2926
District Court Case Number: 1:25-CV-14118

Attorney General Case# 202512229

1: 25 - CV -14118
502 281 90. notary
(2/14ᵗʰ 4ᵗʰ cird)  commission

AG: 2025 12229



*State of New Jersey*
**Office of the Public Defender**
Atlantic Region

JENNIFER SELLITTI
*Public Defender*

PHIL MURPHY
*Governor*
TAHESHA WAY
*Lt. Governor*

Scott Sherwood, *Deputy Public Defender*
5914 Main Street, Suite 201
Mays Landing, New Jersey 08330
609-625-9111  Fax 609-625-4260
E-Mail: TheDefenders@OPD.STATE.NJ.US

Honorable Dorothy Garrabrant, J.S.C.
Atlantic County Superior Court
4997 Unami Boulevard
Mays Landing, NJ 08330

Re:  State of New Jersey v. Antonio Witherspoon
Indictment No.: 25-05-1595-I

Dear Judge Garrabrant,

I represent Defendant Antonio Witherspoon ("Mr. Witherspoon") in the above matter. Please accept this letter brief in lieu of a more formal brief in support of Mr. Witherspoon's Motion to Suppress Evidence.

**STATEMENT OF RELEVANT FACTS**

The Defense contests all facts as stated in the State's brief and in all provided discovery.

**LEGAL ARGUMENT**

The Article I, Paragraph 7 of the New Jersey Constitution and the Fourth Amendment of the United States Constitution guarantee citizens protections against unreasonable searches and seizures. U.S. Const Amend IV. N.J. Const. Art. I, Para VII. Thus, whenever law enforcement conducts a warrantless search or seizure, the state must prove by "a preponderance of the evidence that [the] warrantless search or seizure, '[fell] within one of the few well-delineated exceptions to the warrant requirement.'" Shaw, 213 N.J. at 409-410 (quoting State v. Pineiro, 181 N.J. 13, 19-20 (1968)).

**PLAIN VIEW EXCEPTION**

State v. Gonzales, 227 N.J. 77 (2016), establishes the New Jersey two-part test to determine whether the plain view exception is permitted. It must be established that 1: the incriminating

1

Antonio K Witherspoon v. Atlantic City Police Department
Case Number: 25-2926
District Court Case number: 1:25-CV-14118
Attorney General Case #202512229

character of the evidence perceived by their senses was "immediately apparent" to the seizing officers, and 2: the officers had the "right of access" to the evidence perceived. (Horton v. Calif., 496 U.S. 128, 110 S. Ct. 2301, 2308 (1990)).

To prove a right of access, the State must show that the officer had some legal basis for being in the place where the evidence was discovered. (Coolidge v. N.H., 403 U.S. 443, 91 S. Ct. 2022, 2038 (1971)). The State argues that Officers held a lawful vantage point because they were rendering aid to Mr. Witherspoon as a part of their duties as law enforcement officers. Defense, however, would argue that unzipping the outer pocket of Mr. Witherspoon's jacket and further searching Mr. Witherspoon's jacket for weapons while he was still unconscious, instead of rendering immediate aid, initiated an unlawful search and subsequent seizure.

For a piece of evidence's incriminating nature to be immediately apparent, requires that an officer observing the evidence has probable cause to suspect that the evidence is related to a crime. (State v. Bruzzese, 94 N.J. 210, 236-238). "In determining whether the officer has probable cause to associate the item with criminal activity, the court looks to what the police officer reasonably knew at the time of the seizure." Bruzzese, 94 N.J. at 237. To determine whether the crime of unlawful possession of a weapon—N.J.S.A. 2C:39-5(d)—has occurred, an officer must look to "whether the circumstances surrounding the possession were manifestly appropriate' for lawful use." Ibid. (citing State v. Colon, 186 N.J. Super 355, 357 (App. Div. 1982)). Unlike the suspect from Bruzzese, Mr. Witherspoon is not involved in any active investigations or warrants. There were no investigations of a firearm attacks in the area at the time that would indicate Mr. Witherspoon was acting in a suspicious manner.

For the illegal nature of an object to be immediately apparent, there must be facts surrounding the evidence that would lead a reasonable officer to have probable cause that the evidence is related to a crime. (State v. Johnson, 171 N.J. 192, 215 (2002)). The search of Mr. Witherspoon's person was unlawful because the Officers did not have a lawful vantage point, and the believed illegality of the weapon was not immediately apparent as required by the plain-view exception the state relies on to justify the warrantless search. The only reason the weapon came into view was due to an illegal search that was being conducted on Mr. Witherspoon while he was unconscious under the guise of rendering aid.

Defense would argue that both firearms seized were not in plain view of officers because neither were seen from a lawful vantage point, and neither were immediately apparent as

2

Antonio K Witherspoon  v. Atlantic City Police Department
Case Number: 25-2926
District Court Case Number: 1:25-cv-14118
Attorney General Case # 202512229

incriminating.

In Minn. v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130, 2137 (1993), the U.S. Sup. Ct. held that an officer may seize contraband in addition to weapons discovered through the sense of touch *during a frisk*, if he feels "an object whose contour or mass makes its identity immediately apparent, and there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." The State argues that the Officers in Mr. Witherspoon's case acted lawfully under the Plain View exception under the "Plain Feel" exception under State v. Evans, 235 N.J. 125 (2018). The Court in Evans held that "[T]o qualify for the plain feel exception, we stress that an officer must offer more detail than saying he felt contraband. The more detail, the better." Seizures of unidentifiable objects on a suspect's person may be upheld if a lawful pat down is either inconclusive or impossible. (State v. Roach, 172 N.J. 19 (2002)). Here, there was at no time a lawful pat down conducted.

Most pertinently, the Plain Feel exception applies during a Terry stop or Stop and Frisk as explained in Minn v. Dickerson. Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), established that police can stop and question a suspect, without their consent, in the absence of probable cause for arrest. The stop must be justified by a reasonable belief, based upon objective and particularized facts, that the suspect was or is involved in criminal activity. "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." (Ala. v. White, 496 U.S. 325, 110 S.Ct. 2412, 2416 (1990)). Police may search for weapons only if a reasonable person in the same circumstances would be warranted in the belief that the officers' safety was jeopardized. Terry, *supra*, 88 S. Ct. at 1883. An officer must point to specific facts from which he reasonably inferred that the suspect was armed; hunches or subjective impressions are not enough. (Sibron v. N.Y., 392 U.S. 40, 88 S. Ct. 1889, 1903 (1968)). "An officer cannot simply assume that everyone is armed and dangerous until proven otherwise." State v. Garland, 270 N.J. Super. 31, 43 (A.D. 1994). To conduct an investigatory stop, there must be some objective manifestation that the suspect was or is involved in criminal activity. (State v. Arthur, 149 N.J. 1, 8 (1997)).

At no time was a lawful frisk or investigative stop conducted against Mr. Witherspoon. The responding officers at no point had a reasonable and articulable suspicion that Mr.

3

Antonio K Witherspoon v. Atlantic City Police Department
Case Number: 25-2926
District Court Case Number: 1:25-cv-14118
Attorney General Case # 202512229

Witherspoon was armed, or involved in any criminal activity. In fact, none of Mr. Witherspoon's behaviors could have indicated to officers that he was a danger to officer safety, because at the time he was unconscious and unresponsive. Instead, responding Officers conducted an unlawful search of an unconscious man, and argue that the Plain Feel exception is appropriately applied, indicating that Mr. Witherspoon was subject to a stop and frisk before Officers even attempted to take his pulse to determine if he was alive.

In Mr. Witherspoon's case, Officer Miazi states in his report "I unzipped Witherspoon's jacket to check if his chest was filling up with air when I *observed* a black handle, that I immediately recognized as a firearm, in Witherspoon's left jacket pocket" (emphasis added, Exhibit A[1]). However, as seen on Officer Miazi's body worn camera footage from February 25th, 2025, this is inaccurate. As shown in the recorded footage (Exhibit B[2]), Officer Miazi does not speak to the 911 caller on scene as is stated in his report, but instead immediately approaches and unzips Mr. Witherspoon's jacket without taking a pulse. When the jacket is unzipped (timestamp 1:03), there is no weapon in plain view. There is no visible line of sight to the outer jacket pocket where the weapon was located as this pocket was facedown against the boardwalk. Officer Miazi, instead of immediately rendering aid or performing a sternum rub, reaches out and picks up the jacket pocket, using his hand to feel the contents inside the pocket. At this point, after he manipulates the pocket and lifts the jacket off the boardwalk, a portion of the handle of a firearm is visible. The only reason the weapon became visible is because Officer Miazi decided to search the outer pockets of Mr. Witherspoon's jacket instead of rendering aid to an unconscious man. This is clearly not analogous to the holding of Evans, and was not a lawful "plain feel" search but was instead an unlawful search of a man in need of medical attention. There are no mentions of conducting an investigatory stop or frisk, or any reasonable articulable suspicion to do so, in any officer reports.

In fact, this Officer does not render aid to Mr. Witherspoon at any point during the incident. Officer Miazi states in his report that "I continued to render aid and attempted a sternum rub on Mr. Witherspoon's chest to wake him up." At no point on the body worn camera footage did Officer Miazi perform a sternum rub, or provide any other form of medical aid to Mr. Witherspoon. Clearly, Officer Miazi's priority when he responded to the scene was to search the Defendant for

---

[1] Defense Exhibit A: Officer Report Packet
[2] Defense Exhibit B: Officer Miazi's BWC

4

5 of 26

Antonio K Witherspoon v. Atlantic City Police Department
Case Number: 25-2926
District Court Case Number: 1:25-cv-14118
Attorney General Case # 202512229

contraband, and not to render aid or engage in any community care responsibilities. There are multiple inconsistencies in Officer Miazi's report compared to his body worn camera footage that has been provided.

## EXTINGENT CIRCUMSTANCES AND COMMUNITY CARETAKING EXCEPTION

For purposes of justifying a warrantless search, exigent circumstances exist only if law enforcement officers do not have sufficient time to obtain any form of warrant, including a telephonic warrant (State v. Johnson, 193 N.J. 528, 556 (2008). The burden is on the State "to prove the exceptional nature of the circumstances that exempts it from the warrant requirement." (State v. Ravotto, 169 N.J. 227, 236 (A.D. 2001)); State v. Laboo, 396 N.J. Super. 97, 102-103 (A.D. 2007)). There are nine factors set forth in State v. Alverez to assess whether exigent circumstances exist:

> (1) degree of urgency and amount of time necessary to obtain a warrant; (2) reasonable belief that contraband is about to be removed; (3) possibility of danger to police officers guarding the site of the contraband while a warrant is sought; (4) information indicating the possessors of the contraband are aware that police are on their trail; (5) destructibility of the contraband, and the knowledge that efforts to dispose of it and escape are characteristic behavior of persons engaged in this type of crime; (6) gravity of the offense involved; (7) possibility that the suspect is armed; (8) strength or weakness of facts establishing probable cause; and (9) time of the entry. (State v. Alvarez, 238 N.J. Super. 560, 568 (A.D.1990).

The State argues that the clearest examples of exigent circumstances are those where there is a genuine medical emergency, e.g. State v. Castro, 238 N.J. Super. 482 (App. Div. 1990), which can be determined by a prudent and reasonably based belief that there is a potential medical emergency of unknown dimension. The emergency-aid doctrine is a subset of the exigent circumstances exception (State v. Hathaway, 222 N.J. 453 (2015)). In State v. Edmonds, 211 N.J. (2012), the court defined a 2-part test for determining if the emergency aid exception applied. First, the officer or public safety official must have an objective reasonable basis to believe that an emergency required them to provide immediate assistance to provide immediate assistance to protect or preserve a life, **and** a reasonable nexus must exist between the emergency and area to be searched.

Antonia K Witherspoon v. Atlantic City Police Department
Case Number: 25-2926
District Court Case Number: 1:25-CV-14118
Attorney General Case# 202512229

The State argues that it was necessary for Officers to fully unzip Mr. Witherspoon's jacket to determine if he was breathing, and that the subsequent seizure of the weapon, located in his outer jacket pocket, was lawful. However, this search and subsequent seizure fails the test under Edmonds. Defense would concede that an unconscious man that is subject to a 911 call for aid should be rendered aid and meets the first part of the Edmonds analysis. However, there was no lawful reason to unzip and further search Mr. Witherspoon while he was unconscious, particularly as aid had not yet been rendered when the search was conducted. The initial weapon seized was not in plain view when officers initially responded, and was not in plain view when seized, was not a lawful plain feel scenario, and therefore fails the second part of the Edmonds analysis.

In Cady v. Dombrowski, 413 U.S. 433, 93 S. Ct. 2523, 2528 (1973), the Court recognized that in addition to investigating crime, police also engage in "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." The State further argues that the responding officers were justified in their search under the Community Caretaking Exception, or community caretaking services. The State relies on State v. Diloreto, 180 N.J. 264, 275 (2004) which states in part that these types of searches occur when police officers are not acting in their law enforcement or criminal investigatory roles but are instead acting generally to protect the safety of the community. The same court also held that "the community-caretaking doctrine is not a justification for the warrantless entry and search of a home in the absence of some form of an objectively reasonable emergency."

However, it is not appropriate to compare the facts of Mr. Witherspoon's case to the facts in Diloreto. In Diloreto, the defendant was sleeping in his car and was *the subject of an endangered person's report*. However, the Court emphasized that in the absence of the missing/endangered person's report, the officers' conduct would not have been justified. These facts, of officers locating a reported missing or endangered person, is a far different set of circumstances than searching an unconscious man who fell off his bike, who did not have any corresponding reports of concerning or suspicious activity. Officers did not need to unzip Mr. Witherspoon's jacket and enter his outer pocket to engage in their "community caretaking" responsibilities. (Exhibit B, Exhibit C[3], Exhibit D[4])

---

[3] Defense Exhibit C: Officer Garcia BWC
[4] Defense Exhibit D: Officer Hossain's BWC

6

Antonio K. Witherspoon V. Atlantic City Police Department
Case Number: 25-2926
District Court Case Number: 1:25-CV-14118
Attorney General Case #202512229

The facts in Mr. Witherspoon's matter are more similar to State v. Keaton, 222 N.J. 438 (2015), where the Defendant had been removed from his car and was being treated at the roadside by an E.M.T. for injuries sustained in an accident. A trooper entered the car to locate defendant's credentials and saw a gun and marijuana in plain view. The court ruled that this entry could not be justified as community caretaking; there was no need for an immediate search to preserve life or property. Officers in this case had no legal grounds to search Mr. Witherspoon's jacket prior to rendering first aid or administering a sternum rub (Exhibit B, Exhibit C, Exhibit D)

## SEARCH INCIDENT TO ARREST AND INEVITABLE DISCOVERY DOCTERINE

An inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration. (State v. Hummel, 232 N.J. 196 (2018)). The State contends that under State v. Hummel, Police can "search an arrestee without a warrant and inventory the property in the arrestee's possession before he or she is jailed. Such searches "serve[] a three-fold purpose: protection of the inventoried property while in police custody, shielding the police and storage bailees from false property claims, and safeguarding the police from potential danger." (State v. Mangold, 82 N.J. 575, 581-82 (1980)). Defense argues that at the time of the inventory search, Mr. Witherspoon was still unconscious and was not under arrest for an inventory search to take place. He was not a threat as he was still unresponsive.

Determining the propriety of an inventory search involves a 2-step inquiry: (1) whether the impoundment of the property was justified; and (2) whether the inventory procedure was reasonable. The reasonableness inquiry includes "the scope of the search, the procedure used, and the availability of less intrusive alternatives". Here, there were less intrusive means available than searching the outer pocket of an unconscious man with no reports of him being in possession of a weapon. Personal property may not be searched under the guise of an inventory search without first affording the arrestee the opportunity to make arrangements for the disposition of the items U, 321 N.J. Super. 96 (A.D. 1999). Here, Mr. Witherspoon was not afforded any opportunity for any disposition of any items, as he was still unconscious at the time.

The inevitable discovery rule was formulated by the U.S. Sup. Ct. in Nix v. Williams, 467 U.S. 431, 81 L. Ed. 2d 377 (1984). In State v. Sugar (II), 100 N.J. 214 (1985), the N. J. Sup. Ct. also held that illegally seized evidence is admissible when it would have inevitably been discovered without reference to police error or misconduct. The State must prove beyond clear and

7

Antonio K Witherspoon  V. Atlantic City Police Department
Case Number: 25-2926
District Court Case Number: 1:25-CV-14118
Attorney General Case # 202512229

convincing evidence that: 1. proper and normal procedures would have been used to complete the investigation; 2. those procedures would have, under the circumstances, resulted in discovery of the evidence; and 3. those procedures would have occurred independent of evidence discovered by unlawful means.

In the present case, Defense contends there was no lawful search could have been made while Mr. Witherspoon was unconscious and requiring aid, and therefore the evidence does not fall under the inevitable discovery doctrine as it would not have been discovered by officers had they not unlawfully searched Mr. Witherspoon's pockets.

## CONCLUSION

The State bears the burden of demonstrating that the warrantless stop, seizure and search of Defendant falls within one of the exceptions to the search warrant requirement. The State has not demonstrated any exception. For the foregoing reasons, the firearms seized in the search of Mr. Witherspoon's person should be suppressed.

Please contact me if you require any additional materials in deciding this matter, or if I can in any way further advocate for Mr. Witherspoon.

Respectfully submitted

Hunter Hurst

Attorney for Defendant Antonio Witherspoon

8

ATL-25-000855   01/14/2026   Pg 1 of 1   Trans ID: CRM202653736

**PREPARED BY THE COURT**
Superior Court of New Jersey
Atlantic County Court House
4997 Unami Blvd.
Mays Landing, NJ 08330

| | |
|---|---|
| **STATE OF NEW JERSEY,** | **SUPERIOR COURT OF NEW JERSEY** |
| | **ATLANTIC COUNTY** |
| Plaintiff, | **LAW DIVISION – CRIMINAL PART** |
| | |
| v. | **CASE NO: ATL-25-855** |
| | **IND. NO: 25-05-01595-I** |
| **ANTONIO WITHERSPOON,** | **AMENDED SCHEDULING ORDER** |
| | _Antonio K Witherspoon received Documents on_ |
| Defendant. | _Jan. 23, 2026_ |

THIS MATTER having come before the Court this date, and defendant(s) with counsel and the State present, and the Court having considered the status of this case and good cause appearing for the confirmation of certain circumstances regarding motions being urged upon the Court and a schedule for handling of same, the Court notes the following:

The nature of the Motion(s): <u>Motion to Suppress</u>
The Moving Party: <u>Defense</u>

THEREFORE, IT IS ON THIS 14th DAY OF JANUARY 2026 HEREBY **ORDERED** AS FOLLOWS:

1. **Briefs** shall be filed with the Court and served on the parties as follows:

   The **State's** brief was received.

   The **Defendant's** brief was received.

   Briefs shall contain **at a minimum** the issues presented, a recitation of the facts, an analysis of the law, the relief requested, a list of witnesses and evidence to be offered.

2. Oral Arguments will take place on **Tuesday, March 10, 2026 at 9:00 a.m.**

Hon. Dorothy Infarvito-Garrabrant, J.S.C.



# OFFICE OF THE PROSECUTOR
## County of Atlantic

# WILLIAM E. REYNOLDS
## Atlantic County Prosecutor
4997 Unami Boulevard, Suite 2
Mays Landing, NJ 08330
609-909-7800 — Fax 609-909-7802



**ERIK M. BERGMAN**
*First Assistant Prosecutor*

**RICHARD E. McKELVEY**
*Executive Assistant Prosecutor*

**JOHN H. FLAMMER**
*Chief Counsel to the Prosecutor*

**PATRICK F. SNYDER**
*Chief of County Detectives*

**PATRICIA A. HAYEK**
*Director of Victim Witness*

November 7, 2025

Honorable Dorothy Incarvito-Garrabrant
4997 Unami Boulevard
Mays Landing, NJ 08330

> Re: <u>State v. Antonio Witherspoon</u>
> PG# 25000855
> Indictment: 25-05-1595-I

Dear Judge Garrabrant:

Please accept this letter brief in lieu of a more formal submission from the State in support of our request that you deny Defendant's Motion to Suppress.

## FACTS

On Tuesday, February 25, 2025, at approximately 1:06 AM, Officer Garcia was dispatched to the area of Kentucky Avenue and the Boardwalk in Atlantic City for a report of an unresponsive male. Upon arrival, Officer Garcia spoke with the caller who stated that she was walking eastbound on the Boardwalk when she heard a loud noise. As she turned around to check what the loud noise was, she realized that an unknown male had fallen from his electric bicycle. At this time, she called 911 to report that the male was unresponsive.

Para.2 While on scene, Officer Garcia and back-up officers began to render medical aid to the male, who was lying face down on the ground. Officers reposition him onto his back to check if he was still breathing. At the same time, Officer Garcia checked for a pulse. Officer M. Miazi zippered down the male's jacket to check if his chest was filling with air. At this time, Officer M. Miazi observed, in plain-view, a black handle consistent with a firearm. That firearm was later identified as a Taurus G2C.

Para 3 Officer Miazi removed the firearm. Officer Garcia checked for any other weapons. After searching inside of Witherspoon's right, jacket, Officer Garcia located an additional firearm. Garcia placed that weapon to the side, where it was ultimately secured inside of a police vehicle. That firearm was later identified as a .25 Bauer Automatic Pistol. At this point, Garcia continued to render aid by doing a sternum rub on the male's chest to wake him up. At this point, the male began to open his eyes and non-verbally answer questions with head nods.

Para 4 In his report, Officer Miazi noted that Witherspoon appeared to be highly under the influence of alcohol and had a strong odor of alcohol coming from his body. EMT's arrived and began to treat Defendant. EMT personnel also remarked about the odor of alcohol coming from the Defendant. Defendant was transported to AtlantiCare Regional Medical Center for further medical treatment.

## LEGAL STANDARD & ANALYSIS

Para 5 In a motion to suppress a warrantless search or seizure it is the State's burden to show by a preponderance of the evidence that a search or seizure was constitutionally valid. See State v. Whittington, 142 N.J. Super. 45, 52 (App. Div. 1976).

Police are not required to turn away from evidence that comes to their attention. Where police officers are in a location where they have a right to be and they inadvertently come across an item of obvious evidential value, they are said to have come across the item in "plain view" and may seize it. Coolidge v. New Hampshire, 403 U.S. 443 (1971). To that end, the State must show the search or seizure was conducted pursuant to a valid exception to the warrant requirement.

## I. OFFICERS WERE RENDERING EMERGENCY AID TO DEFENDANT BASED ON A PRUDENT AND RASONABLE BELIEF THAT THERE WAS A MEDICAL EMERGENCY

Unexpected emergency situations where police response is urgently required constitute what are called "exigent circumstances." If exigent circumstances are present, then, as a general rule, police will not be required to take the time to obtain a warrant to enter premises. It is not necessary that the police be responding to a law enforcement-related call in order for the circumstances to be exigent. Indeed, the clearest examples of exigent circumstances are those where there is a genuine medical emergency, e.g. State v. Castro, 238 N.J. Super. 482 (App. Div. 1990).

In Castro, the Appellate Division opined that, "The exigency test may also be met by a prudent and reasonably based belief that there is a potential medical emergency of unknown dimension. As stated in Wayne v. United States, 318 F.2d 205, 212 (D.C.Cir.1963):

"[f]ires or dead bodies are reported to the police by cranks where no fires or bodies are to be found.... But the business of policemen and firemen is to act, not to speculate

3

or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. (Emphasis original)."

New Jersey's test for determining whether the emergency aid doctrine justifies a warrantless search had previously included a subjective element: that the police not be motivated by a desire to find evidence. See, e.g., State v. O'Donnell, 203 N.J. 160, 163 (2010). As stated above, the exigency test may also be met by a prudent and reasonably based belief that there is a potential medical emergency of unknown dimension.

Here, it is clear that law enforcement reasonably believed that Defendant was having a medical emergency. Law enforcement received a call that there was an unresponsive male. When law enforcement arrived, they found an unresponsive male. Rather than leaving the unresponsive male without medical attention, officers began to render aid. In an effort to determine whether the Defendant was still breathing or not, one of the officers unzipped Defendant's jacket and observed a firearm.

The surveillance of this incident shows that approximately five minutes elapsed from the time when Defendant became unconscious. Surveillance shows Defendant struggling to stay upright and conscious, but he ultimately loses consciousness and falls to the Boardwalk. Aside from the caller, Officer Garcia was the first person on scene to aid Defendant. **See Exhibit S1.** Due to the obvious risk to officer safety that this firearm presented, the firearm was removed from the Defendant and placed aside. To ensure officer safety, the Defendant was further lawfully searched and found to be in possession of another firearm.

4

*Para. 12*

Due to the obvious medical emergency, Garcia and Miazi did what any other good police officer would do when they encounter a person suffering a medical emergency. They began to render aid and discovered a firearm in plain-view. The officers did not go rifling through Defendant pockets upon coming into contact with him. They merely began to render aid, which resulted in discovery of a firearm.

## II. OFFICER CONDUCT FALLS WITHIN COMMUNITY CARETAKING EXCEPTION

*Para. 13*

Closely related to the issue of community health searches is the issue of community caretaking searches. These searches occur when police officers are not acting in their law enforcement or criminal investigatory roles, but are instead acting generally to protect the safety of the community. State v. Diloreto, 180 N.J. 264, 275 (2004). This function serves to further a legitimate government interest "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski, 413 U.S. 433, 441 (1973). When the State can show that the purpose of a warrantless search was to protect the property or safety of its citizens, the courts assess the lawfulness of police conduct on the flexible standard of reasonableness of the police action under the particular circumstances of the case. See State v. Diloreto, 180 N.J. at 275-276. See also State v. Kaltner, 420 N.J. Super. 524, 535, 546 (App. Div. 2011), aff'd o.b. 210 N.J. 114 (2012) (refusing to find a broad nuisance abatement exception to the warrant requirement and applying reasonableness test and case-specific inquiry).

*Para. 14*

Comparing our immediate case with Diloreto, it seems that law enforcement conduct here is permissible. In Diloreto, the Court held that "that the community

5

caretaking doctrine justified the police's ordering the defendant, whom they had found sleeping in his automobile under unusual circumstances, out of the car, patting him down and securing him in a police vehicle once they discovered he was also the subject of an endangered missing person report and were awaiting confirmation on the report. Here, while not totally analogous, the Court found law enforcement actions permissible. In our case, Defendant was not simply sleeping in his car. Law enforcement received information that the victim was unconscious following an incident with an electric bike on the Atlantic City Boardwalk, a highly traveled walkway through the city. Pursuant to their "community caretaking" responsibilities, they checked on this unconscious man in the middle of a public walkway. Officer actions here were clearly justified under the Community Caretaking exception. It is the State's argument that this exception weighs most heavily towards Officer Miazi and Officer Garcia's involvement in this situation.

### III.   WITHERSPOON'S FIREARM WAS DISCOVERED IN PLAIN-VIEW

The New Jersey Supreme Court adopted the plain feel exception to the warrant requirement in State v. Evans, 235 N.J. 125, 135-139 (2018). Under the exception, when officers conducting a lawful pat-down feel an object with a contour or mass that makes the object's identity immediately apparent, they may seize it without a warrant. According to Evans, immediate tactile recognition of contraband justifies any subsequent search and seizure of it.

A warrantless search is prima facie invalid unless it falls within one of the judicially created warrant exceptions. The exceptions to the warrant requirement include a search incident to a valid arrest. If a search is incident to a lawful arrest, the seizure of the arrestee

6

automatically justifies a warrantless search of the arrestee and the area within his immediate grasp. Chimel v. California, 395 U.S. 752 (1969). If there is probable cause to arrest, such a search will be valid despite the absence of any suspicion that an incidental search of the arrestee or the surrounding area within the arrestee's reach will disclose weapons, contraband, or evidence. Justifications for dispensing with both the suspicion and the warrant requirements for a search incident to a lawful arrest are that an arrestee may pose an immediate danger to the police and that the arrestee may seek to destroy evidence within his reach. Chimel v. California, 395 U.S. at 762-763.

The absolute touchstone of the warrant exception for any search incident to arrest is that the arrest itself must be lawful. Thus, before making an arrest, an officer must have probable cause to believe that the arrestee has committed a crime or offense for which a custodial arrest is permissible. See Maryland v. Pringle, 540 U.S. 366 (2003); State v. Waltz, 61 N.J. 83 (1972). See also State v. Carter, 54 N.J. 436 (1969). For a warrantless search incident to an arrest to be lawful, probable cause to arrest must exist prior to the search. Any evidence discovered during the search cannot be used to establish probable cause to arrest. Sibron v. New York, 392 U.S. 40, 63 (1968).

In the instant case, Officers had probable cause to conduct a search, based on the immediate facts as relayed to them, and their subsequent observations on scene. Defendant was under the influence of alcohol, in unlawful in possession a firearm in a public area. In efforts to render medical aid, Officer Miazi unzipped Defendant's jacket, revealed the handle of a handgun. Defendant was not in a constitutionally-protected area

7

when he <u>encountered</u> law enforcement.  Any argument by the Defendant pursuant to this exception should be given little merit.

## IV.   POLICE CONDUCTED LAWFUL INVENTORY SEARCH OF DEFENDANT

Police can "search an <u>arrestee</u> without a warrant and inventory the property in the arrestee's possession before he or she is jailed." <u>State v. Hummel</u>, 232 N.J. 196, 208 (2018). Inventory searches "serve[] a three-fold purpose: protection of the inventoried property while in police custody, shielding the police and storage bailees from false property claims, and safeguarding the police from potential danger." Ibid. (alteration in original) (quoting <u>State v. Mangold</u>, 82 N.J. 575, 581-82 (1980)).

<u>An inventory search must be reasonable</u> under the circumstances. Ibid.; see also <u>Mangold</u>, 82 N.J. at 583. Accordingly, "the propriety of an inventory search involves a two-step inquiry: (1) whether the <u>impoundment of the property is justified;</u> and (2) <u>whether the</u> <u>inventory procedure was legal.</u>" Hummel, 232 N.J. at 208 (citing Mangold, 82 N.J. at 583).

Factors relevant to determining the reasonableness of the search include "<u>the scope</u> <u>of the search, the procedure used</u>, and the <u>availability of less intrusive alternatives.</u>" <u>Mangold</u>, 82 N.J. at 584. No one factor is dispositive, and each factor should be balanced against the others. <u>Hummel</u>, 232 N.J. at 208-09. Assessing "<u>whether law enforcement</u> <u>conducted the search pursuant to routine police procedures is essential</u>" and "<u>[s]earches</u> <u>conducted at variance</u> [476 N.J. Super. 235]<u>with or in the absence of standardized</u> <u>practices are unlikely to satisfy</u> the inventory-search warrant exception." Id. at 210.

Note that inventorying an <u>arrestee's personal effects</u>, like inventorying a motor vehicle, is perfectly acceptable. <u>Illinois v. Lafayette</u>, 462 U.S. 640, 646 (1983) ("[e]xamining

8

all the items removed from the arrestee's person or possession and listing or inventorying them [without a warrant] is an entirely reasonable administrative procedure. It is immaterial whether the police actually fear any particular package or container contains a weapon or other contraband; the need to protect against risks arises independent of a particular officer's subjective concerns"); State v. Vanderee, 476 N.J. Super. at 234-235

Here, the impoundment of the property was justified; and the inventory procedure was legal. Any argument by the Defendant pursuant to this exception should be given little merit.

## V.    WITHERSPOON'S FIREARM WOULD HAVE BEEN INEVITABLY DISCOVERED

The inevitable discovery rule permits the admission of evidence obtained through an unreasonable search if the evidence in question would have been discovered by law enforcement absent the unreasonable search. *State v. Camey*, 239 N.J. 282, 301 (N.J. 2019) citing *Nix v. Williams*, 467 U.S. 431, 444-48 (1984). In *State v. Robinson*, the Supreme Court of New Jersey held that claims of inevitable discovery by the State hinge on whether the State can show that the evidence in question "inevitably would have been discovered by lawful means" absent the unreasonable search occurring. 228 N.J. 529, 554 (N.J. 2017). In that case, police had stopped a car and found two of its occupants had active arrest warrants out before illegally searching a purse in the car, finding a handgun and impounding the car. *Id.* at 538. The New Jersey Supreme Court stated in its remand opinion that it could not rule on the question of inevitable discovery because the suppression hearing lacked a record of what steps officers would have taken "had they not

9

found the gun" and noted that police very likely had probable cause to impound the vehicle and conduct an inventory search, inevitably leading to the discovery of the gun. *Id.* at 553. If police can show that they could have conducted a lawful search and obtained the evidence in controversy without the unlawful search ever occurring, the inevitable discovery doctrine applies and the evidence should not be suppressed. The inevitable discovery doctrine clearly applies in this case. Defendant was the recipient of medical aid after suffering an apparent medical episode of the Atlantic City Boardwalk.

## CONCLUSION

In this matter, any argument by the Defendant that this warrantless search and seizure of contraband was unlawful should be given no serious merit. Law enforcement officers responded to a report of an unresponsive male. Rather than leaving the unresponsive male without medical attention, officers began to render aid. In an effort to determine whether the Defendant was still breathing or not, one of the officers unzipped Defendant's jacket and observed a firearm. A subsequent, lawful, search revealed an additional firearm.

Respectfully Submitted,

David C. Little

Assistant Atlantic County Prosecutor

10

## Atlantic City Police Department | Supplemental Report

| Incident Report Number:<br>25-014877 | Incident Location:<br>Kentucky Ave/Boardwalk, Atlantic City, NJ 08401 | | Incident Date:<br>02/25/2025 |
|---|---|---|---|
| New Incident: | | Original Offense - 1: | New Offense - 1: | New Offense - 2: |

**NARRATIVE**

25-014877

02/25/2025 0106 hours

J. Garcia #1076

On Tuesday, February 25, 2025, I, Officer J. Garcia #1076, was assigned to the Atlantic City Police Department Tourism District Unit, in full uniform capacity as BW40. At approximately 0106 hours, I was dispatched to Kentucky & the Boardwalk in reference to an unresponsive male, later identified as Antonio Witherspoon.

Upon arrival, I spoke with the caller, who stated she was walking eastbound on the boardwalk when she heard a loud noise. As she turned around to check what the loud noise was, she realized it was Witherspoon who fell off of his electric bicycle. At this time, is when she called 911 and stated Witherspoon was unresponsive.

While on scene, back up officers and I began to render medical aid to Witherspoon. Witherspoon was lying face down to the ground, and I repositioned him on his back to check if he was breathing. Afterwards, Officer M. Miazi #1024 zippered down Witherspoon's jacket to check if his chest was filling up with air as I checked Witherspoon's neck area for a pulse. At this time, Officer M. Miazi observed in plain view a black handle that was consistent with a firearm. Officer M. Miazi removed the firearm and later confirmed it to be a Taurus G2C 9MM. Following this, I confirmed Witherspoon had a pulse and immediately checked his persons for any other weapons. Inside of Witherspoon's right jacket pocket, I located an additional firearm, later confirmed as .25 Bauer Automatic Pistol. I safely placed the firearm to the side, a backup officer took possession of the firearm and placed it into a marked police patrol vehicle where it was secured. Witherspoon was placed into custody, cuffed, and double locked without incident. I went back to rendering aid and began doing a sternum rub on Witherspoon's chest to wake him up. Witherspoon began opening his eyes and was able to nonverbally answer my questions by nodding his heads. At this time, emergency medical technicians arrived on scene and began treating Witherspoon. Witherspoon was transported to AtlantiCare Regional Medical Center.

Later on, both firearms were transferred custody to Detective Sergeant J. Schwenger #892. While at the Public Safety Building (PSB), I entered the recovered firearms into the National Crime Information Center (NCIC) and completed a NJ trace entry for both firearms. Please see the incident report for further information regarding this case.

My Axon Body Worn Camera was on and in Event mode and is tagged for this case as Investigative and Arrest. (BWC #1076 Serial: D01A1377T).

**End of Report.**

| Reporting Officer(s):<br>Garcia, Juan | | Badge Number:<br>1076 | Report Date:<br>02/25/2025 |
|---|---|---|---|
| Reviewed by:<br>734 | Badge Number:<br>734 | Copy To: | Page:<br>1 of 2 |

## Atlantic City Police Department

## Continuation

| Incident Report Number | Incident Location: | Incident Date: |
|---|---|---|
| 25-014877 | Kentucky Ave/Boardwalk, Atlantic City, NJ 08401 | 02/25/2025 |

| Reporting Officer(s): | Badge Number: | Pages: |
|---|---|---|
| Garcia, Juan | 1076 | 2 of 2 |

ACPO/25000855/00000052

| Atlantic City Police Department | | Incident Report | |
|---|---|---|---|

**Incident:**
4-RECEIVING STOLEN PROPERTY

| Incident Report Number: | Between: Date - Time | | And/At: Date-Time | |
|---|---|---|---|---|
| 25-014877 | | | 2/25/25 | 01:06 |

**Incident Location:**
Kentucky Ave/Boardwalk, Atlantic City, NJ 08401

| Offense - 1: | Offense - 2: | Offense - 3: | Offense - 4: |
|---|---|---|---|
| 2C:20-7A | 2C:39-3D | 2C:39-5 | 2C:39-5B |
| Offense - 5: | Offense - 6: | Offense - 7: | Offense - 8: |
| 2C:39-3F(1) | | | |

| | Name (Last, First, Middle) | DOB: | Race/Sex |
|---|---|---|---|
| V | Sweeney, Samuel | 06/12/1998 | W/M |

| Address: (Address, City, State, Zip) | Phone 1 |
|---|---|
| 198 Lake Shore Dr, Frederica, DE 19946 | (302) 423-4769 |

| Employer | Phone 2 |
|---|---|
| | |

| Employer Address | Work Phone # |
|---|---|
| | |

| | Name (Last, First, Middle) | DOB: | Race/Sex |
|---|---|---|---|
| | | | |

| Address: (Address, City, State, Zip) | Phone 1 |
|---|---|
| | |

| Employer | Phone 2 |
|---|---|
| | |

| Employer Address | Work Phone # |
|---|---|
| | |

Body Worn Camera Used
**NARRATIVE**

Atlantic city police Department

Case # 25-014877 47

Arrested: Antonio Witherspoon

DOB: 04-23-1986

Handgun Recovered

Exhibit A

| Vehicle Information: (Year, Make, Model, Style, Color) | | | |
|---|---|---|---|
| License Number: | State: | Expiration Year: | Vin: | Insurance Company: |
| Other Vehicle Information: | | | NCIC# |

| Reporting Officer(s): | Badge Number: | Report Date: |
|---|---|---|
| Miazi, Mohammed | 1024 | 02/25/2025 |

| Time Received: | Time Cleared: | Unit(s) Assigned: | Pages: |
|---|---|---|---|
| 01:06:21 | 07:23:55 | C2A, C4A, C5C, BW37, BW40, S | 1 of 5 |

| Reviewed by: | | Badge Number: | Copy To |
|---|---|---|---|
| 901 | | 901 | |

Date: 02/25/2025

Offense - 1: 2C:20-7A

Incident Report Number: 25-014877

ACPO/25000855/0000000046

## Atlantic City Police Department

**Continuation**

| Incident Report Number | Incident Location: | Incident Date: |
|---|---|---|
| 25-014877 | Kentucky Ave/Boardwalk, Atlantic City, NJ 08401 | 02/25/2025 |

On Tuesday, February 25, 2025, I, Officer M. Miazi #1024 along with my partner, Officer S. Hossain #1001, were assigned to the Atlantic City Police Department Tourism District Unit, in full uniform capacity as BW37. At approximately 0106 hours, I was dispatched to Kentucky & the Boardwalk in reference to an unresponsive male, who was later identified as Antonio Witherspoon.

Upon arrival, I spoke with the caller who stated she was walking eastbound on the boardwalk when she heard a loud noise. As she turned around to check what the loud noise was, she realized it was Witherspoon who fell off of his electric bicycle. This is when she called 911 and stated Witherspoon was unresponsive.

It was at this time I observed the unresponsive male and I began to render medical aid to Witherspoon. Witherspoon was lying face down on the ground, and I positioned him on his back to check if he was breathing. I un zipped Witherspoon's jacket to check if his chest was filling up with air when I observed a black handle, that I immediately recognized as a firearm, in his right jacket pocket. I, Officer M. Miazi, then removed the firearm. As we were checking for any other weapons, Officer J. Garcia #1076 located an additional firearm, In Witherspoon's left jacket pocket.

I safely placed the firearm to the side, a backup officer took possession of the firearm and placed it into a marked police patrol vehicle. Witherspoon was placed into custody, handcuffed and double-locked, without incident.

I continued to render aid and attempted a sternum rub on Witherspoon's chest to wake him up. Witherspoon began opening his eyes and was able to nonverbally answer my questions with head movement. I confirmed Witherspoon had a pulse.

It should be noted, Witherspoon seem to be highly under the influence of alcohol and also had a strong smell of the alcohol odor was coming from his body. EMT's arrived on scene and began treating Witherspoon. It should be noted EMS personnel stated they could smell an odor of alcohol coming from Witherspoon's body. Witherspoon was then transported to AtlantiCare Regional Medical Center for further medical treatment.

The two firearms recovered were later identified as:

1. Taurus G2C 9MM serial # AEC199866, which was later confirmed to be a stolen firearm NIC# G096186261, out of Atlantic City. To be noted, Taurus G2C 9MM has scratch marks on the serial number AEC199866. The owner of the firearm was later identified as, **(Samuel Sweeney DOB: 06-12-1998).** Please refer to case # (24-015019) for more information.
2. Bauer 25 Caliber Automatic Pistol serial #067075, was checked negative for being stolen.

Both firearms were transferred into custody to Detective Sergeant J. Schwenger #892. The stolen firearm was also cleared by the National Crime Information Center (NCIC).

| Reporting Officer(s): | Badge Number: | Pages: |
|---|---|---|
| Miazi, Mohammed | 1024 | 2 of 5 |

| Atlantic City Police Department | | Continuation |
|---|---|---|

| Incident Report Number | Incident Location: | Incident Date: |
|---|---|---|
| 25-014877 | Kentucky Ave/Boardwalk, Atlantic City, NJ 08401 | 02/25/2025 |

Officer J Garcia #1076 entered recovered firearms into the National Crime Information Center (NCIC) and completed the NJ trace entry form for both firearms. Refer to Officer Garcia's supplemental report for more information.

After speaking with on-call assistant prosecutor Deirdre Laws, who advised me to charge Witherspoon with the following:

1. Two counts of 2C:39-5B (1) knowingly possess a weapon.
2. Two counts of 2C:39-4A (1) Possess of unlawful purpose.
3. 2C:39-3F POSSESSION OF HOLLOW POINT.
4. 2C: 39-3 D Possession of defaced firearms.
5. 2C:20-7A Possession of stolen firearm
6. 2C:39-3J Possession of extended Magazine

Witherspoon was placed on a warrant # 0102 W 2025 000726, which was approved by honorable judge Michelle Funk. A red and black E-bike belonging to Witherspoon was placed into property and evidence for safekeeping.

All necessary paperwork was scanned into Pro-Phoenix. Additionally, the Atlantic City Surveillance Team recovered surveillance footage of Witherspoon falling off of his E-bike and tagged it under the designated case #25-014877.

My body-worn camera #1001/1024 was in event mode. The footage was tagged with the case number. Please see Body Worn Camera footage for a more detailed account of the events.

End of report

| Reporting Officer(s): | Badge Number: | Pages: |
|---|---|---|
| Miazi, Mohammed | 1024 | 3 of 5 |

ACPO/25000855/0000000048

## Atlantic City Police Department

## Continuation

| Incident Report Number | Incident Location: | Incident Date: |
|---|---|---|
| 25-014877 | Kentucky Ave/Boardwalk, Atlantic City, NJ 08401 | 02/25/2025 |

**NAMES**

**Arrested**

WITHERSPOON, ANTONIO B/M-38 of 1801 Atlantic Ave,101,
Atlantic City,NJ 08401
DOB: 04/26/1986

Phone 1:(609) 892-3170

**Booking#: 25-000718**

| Case# | Charge | Description | StateSeq# | Ct |
|---|---|---|---|---|
| 25-014877 | 2C:39-5B | POSSESS HANDGUN | | 1 |

**Booking#: 25-000720**

| Case# | Charge | Description | StateSeq# | Ct |
|---|---|---|---|---|
| 25-014877 | 2C:20-7A | RECEIVING STOLEN PROPERTY | | 1 |
| 25-014877 | 2C:39-3D | POSSESS DEFACED FIREARMS | | 1 |
| 25-014877 | 2C:39-3F(1) | POSSESS DUM-DUM BULLETS | | 1 |
| 25-014877 | 2C:39-5 | UNLAWFUL POSSESSION OF WEAPON | | 1 |
| 25-014877 | 2C:39-5B | POSSESS HANDGUN | | 1 |

==================================================================

**OTHER NAMES**

Sweeney, Samuel
of 198 Lake Shore Dr
Frederica,DE 19946

------------------------------------------------------------

| Reporting Officer(s): | Badge Number: | Pages: |
|---|---|---|
| Miazi, Mohammed | 1024 | 4 of 5 |

ACPO/25000855/0000049

## Atlantic City Police Department                          Continuation

| Incident Report Number | Incident Location: | Incident Date: |
|---|---|---|
| 25-014877 | Kentucky Ave/Boardwalk, Atlantic City, NJ 08401 | 02/25/2025 |

**PROPERTY LIST**

---

| Item# | Type | Reason |
|---|---|---|

---

25-001398 - 1  Gun                              Evidence
**Description:**    Taurus g2c 9mm
**Serial#:**        aec199866
**Quan/Value:**     1.000 / $0.00
**Disposition:**    Sent to the Property Room

---

| Item# | Type | Reason |
|---|---|---|

---

25-001399 - 1  Article                    Safekeeping
**Description:**    A red and black E-bike
**Quan/Value:**     1.000 / $0.00
**Disposition:**    Sent to the Property Room

---

| Item# | Type | Reason |
|---|---|---|

---

25-001401 - 1  Gun                            Recovered
**Description:**    Black Taurus G2C 9mm serial# AEC199866
**Make:**           Taurus
**Serial#:**        aec199866
**Quan/Value:**     1.000 / $1.00
**Disposition:**    Sent to the Property Room

---

| Item# | Type | Reason |
|---|---|---|

---

25-001439 - 1  Gun                              Evidence
**Description:**    Bauer 25 caliber automatic
**Quan/Value:**     1.000 / $0.00
**Disposition:**    Retained by the Investigative Agency

| Reporting Officer(s): | Badge Number: | Pages: |
|---|---|---|
| Miazi, Mohammed | 1024 | 5 of 5 |

ACPO/25000855/00000050